. BOLGER *v.* ROSE.

1. CONTRACTS—CONSTRUCTION OF INSTRUMENT AS AN ENTIRETY.
   Early provisions of a contract must be read alongside later provisions and all construed together in order to determine whether the earlier have been modified by the later provisions.

2. MINES AND MINERALS—OIL AND GAS—CONTRACTS—DRY WELLS—COSTS.
   Where first provision of contract whereby plaintiff made an outright assignment to defendant of a half interest in each of three oil and gas leases, with each leasehold considered a separate transaction, and an additional assignment of a one-fourth interest insofar as oil production is concerned, such fourth interest to be in full force and effect only for payment therefrom of one half of the cost of oil production on the particular lease, it was thereby indicated that each leasehold was a separate project, and was modified by subsequent paragraphs whereby plaintiff was relieved from payment of any cost of drilling test wells which were nonproducers.

3. SAME—OIL AND GAS WELLS—CONTRACTS—TEST WELLS.
   Under contract relative to assignment of a half interest in three oil and gas leasehold interests, whereby each leasehold was to

---

[1] 12 Am Jur, Contracts, §§ 241, 243.
[2, 3] 24 Am Jur, Gas and Oil, §§ 22, 44, 80, 112.

be treated as a separate project, and an additional quarter interest was subjected to a lien for payment of one half of oil production costs with plaintiff relieved of payment of any costs for dry wells, defendant was not entitled to withhold one half the cost of dry well on one of the leaseholds where another well on such leasehold subsequently developed into a producer, the contract being construed as entitling plaintiff to have, in return for his half interest, one test well on each lease proving to be a dry hole drilled without cost to him.

Appeal from Isabella; Cash (Paul R.), J., presiding. Submitted April 5, 1949. (Docket No. 10, Calendar No. 44,065.) Decided June 6, 1949.

Assumpsit by Peter J. Bolger against Louis Rose and another to recover amount of money retained by defendants. Judgment for plaintiff. Defendants appeal. Affirmed.

*R. Lee Browning,* for plaintiff.

*Thomas R. McNamara,* for defendants.

BOYLES, J. This case involves the construction of a written contract whereby the plaintiff assigned to the defendants a one-half working interest in 3 oil and gas leases and the defendants agreed to drill test wells on each lease. In the agreement, plaintiff is designated as "Bolger" and the defendants as "Rose-Cline." After a test well had been put down on each lease resulting in 3 "dry" holes, further drilling on the third lease brought in oil. Plaintiff claims that if the first well on each of the 3 leases was a nonproducer, the entire expense of these 3 dry wells was to be borne by the defendants. The defendants claim that under the written agreement the plaintiff is liable for half the cost of the test well on the third lease, to be deducted out of plaintiff's share of the returns, if further drilling on the third

lease brought in oil. As a matter of fact, further drilling on the third lease did bring in 2 producers and the defendants deducted from plaintiff's share of the returns from these 2 producers, half of the cost of drilling the first (dry) hole on said third lease, amounting to $9,987.94.

Plaintiff brought the instant suit in the circuit court of Isabella county to recover the amount thus retained by the defendants. The case was submitted to the circuit judge on a stipulation of facts resulting in judgment for the plaintiff and the defendants appeal. The facts are not in dispute.

Plaintiff sold to the defendants a half interest in 3 separate leases, (1) in Cedar township, Osceola county, (2) in Rose Lake township, Osceola county, and (3) in Adams township, Arenac county. Paragraph No. 1 in the agreement reads as follows:

"(1) Considering each leasehold above described as separate projects, Bolger hereby assigns, with no reservations, a one-half working interest in the above described leasehold estates *in toto.* He also assigns a one-fourth working interest to Rose-Cline insofar as oil production is concerned, such assignment to be in full force and effect as long as one-half of the cost of drilling and operation remains unpaid, with each project considered a separate transaction insofar as the above leasehold estates are concerned, it being understood that Rose-Cline advance all costs of development and operation and Bolger shall pay one-half of said costs solely out of production in the particular lease involved and when, as and if said costs are liquidated, then the one-fourth of oil production hereby assigned reverts to Bolger along with the one-fourth oil production already reserved by him and upon which Rose-Cline have no claim of lien or otherwise."

Standing alone, the above paragraph plainly indicates that each leasehold is a separate project and

that each project (*i.e.,* each leasehold) is to be considered a separate transaction; also that Bolger was obligated to pay half of the cost of the drilling and operation, with each lease considered a separate transaction, out of any production of oil "in the particular lease involved." But that provision must be read alongside of any later provisions, and all provisions of the contract construed together to determine whether paragraph 1 has been modified by later provisions.

Paragraphs 2 and 3 of the agreement specifically apply to the Cedar township lease. Paragraph 2 provides that if a nonproducer results from the test well, it shall be at the sole expense of Rose-Cline. Paragraph 3 provides that, on the contrary, if commercial production of oil is found, Rose-Cline could recover half the costs of such development and operation expense, out of the one-fourth oil production assigned to them by paragraph 1. We have no controversy here as to the Cedar township lease. The only test there resulted in a dry hole and Rose-Cline stood all the expense. However, paragraphs 2 and 3 are important in construing the contract as an entirety, inasmuch as these paragraphs plainly modify and limit the general provisions in paragraph 1. Paragraph 2 eliminated the general liability of the plaintiff under paragraph 1, as to the dry test hole on the Cedar township lease. Under paragraph 2, if the test well on the Cedar township lease proved to be a dry hole, Rose-Cline agreed to stand all the expense; under paragraph 3, if it was a producer, plaintiff agreed to stand half the costs, under paragraph 1.

The dispute arises over the third lease, in Adams township, Arenac county. Paragraph 4 states that defendants will commence a well on some part of the Adams lease within 30 days after Charles W. Teater completed a well, near there, as a commercial pro-

ducer. In the event of that happening, the defendants agreed to commence Adams I and drill a test well. The second sentence of paragraph 4 says:

"It is understood that this well (Adams I) will be drilled on exactly the same conditions as well number one (Cedar I) mentioned herein and that credits for the drilling costs of this well (Adams I) shall not be credited to Rose-Cline out of production from well number one (Cedar I), it being intended that each leasehold estate shall bear its cost, as far as Bolger is concerned, for any well drilled thereon."

This paragraph plainly states that the Adams I well will be drilled on exactly the same conditions as the Cedar I well. That being true, we must conclude that the agreement contemplates that the first well drilled on the Adams lease would be drilled under the same conditions as are stipulated in paragraph 1, as modified by paragraphs 2 and 3, which taken together provide how the Cedar I well should be drilled.

The reasoning and conclusions announced by the trial judge in deciding the case are clear and concise, and we are in accord therewith. The trial court said:

"The Cedar I well is drilled at the 'sole cost and expense' of the defendant if dry (paragraph 2); nothing is said about getting this cost back out of later production from other wells on the Cedar lease. Production on later wells on this lease could not be used to pay back costs on Cedar I, because defendant drills the first well on this lease at his 'sole cost and expense.' The Adams I well being drilled on the same conditions as the Cedar I well; then the defendant agrees to drill Adams I, the first well on the lease, if a dry hole, at its sole cost and expense. If the defendant drills the first well at his sole cost and expense if dry, then he cannot recover one-half of the costs of this well from later production. He cannot do it on the Cedar lease, and neither

can he do it on the Adams lease, because these leases are both drilled under 'exactly the same conditions.' The only way that one-half of the cost of Cedar I and Adams I could be charged back to plaintiff is to get production on Cedar I and Adams I. It cannot be taken out of later production on these leases because defendant agrees to drill the first well on the Cedar and the first well on the Adams lease at their sole cost and expense if dry.    *    *    *

"According to our interpretation of this contract, if defendant pays for the Cedar I (dry hole), he should also pay for the Adams I (dry hole), because these two wells are both drilled 'on exactly the same terms and conditions.' Later development would not matter because plaintiff gets Cedar I and Adams I, if dry holes, at defendant's sole cost and expense, because they are drilled on exactly the same terms and conditions.

"We think that paragraph 1 of this agreement, as modified and changed by paragraphs 2, 3 and 4, allows the plaintiff to obtain the benefit of one dry hole each on the Cedar and Adams lease without any cost to him."

It is quite apparent that a condition arose which was not in the contemplation of the parties when the agreement was made. We feel that the general intent of the parties was that each lease should be developed as a separate project, and that the defendants should bear the entire expense of a test well on each of the leases if the test well was not a producer. As consideration for the plaintiff parting with half of each lease, the defendants assumed the risk of the test well on each lease proving to be a dry hole. The plaintiff is entitled to have his leases tested by the defendants without cost to him, in consideration for his giving defendants half of each lease in return for one test well on each lease, unless the test well produced oil.

The defendants have no right to withhold from plaintiff half of the cost of the first well on the Adams township lease. The judgment for plaintiff is affirmed.

SHARPE, C. J., and BUSHNELL, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.